Filed 9/18/23  In re Angelina C. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re ANGELINA C., a Person Coming Under the Juvenile Court Law. | |
| MERCED COUNTY HUMAN SERVICES AGENCY, Plaintiff and Respondent, v. MELISSA S. et al., Defendants and Appellants. | F086025 (Super. Ct. No. 19JP-00123-C) **OPINION** |

## THE COURT[*]

APPEAL from an order of the Superior Court of Merced County.  Donald J. Proietti, Judge.

Aida Aslanian, under appointment by the Court of Appeal, for Defendant and Appellant Melissa S.

Konrad S. Lee, under appointment by the Court of Appeal, for Defendant and Appellant Carlos C.

Forrest W. Hansen, County Counsel, and Ann Hanson, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Franson, Acting P. J., Smith, J. and Snauffer, J.

## INTRODUCTION

Melissa S. (mother) and Carlos C. (father) are the parents of daughter Angelina C. (born October 2005). Mother and father appeal from the juvenile court's order terminating their reunification services and setting a hearing pursuant to Welfare and Institutions Code section 366.3.[1] They contend the Merced County Human Services Agency (agency) and the juvenile court failed to comply with the inquiry requirements of the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA) and related California law because extended family members were not asked about Angelina's possible Indian ancestry and the notice sent to the Bureau of Indian Affairs (BIA) was deficient.[2] The agency concedes.

For the reasons discussed herein, we accept the agency's concession of ICWA error. Consistent with our decisions in *In re K.H.* (2022) 84 Cal.App.5th 566 (*K.H.*) and *In re E.C.* (2022) 85 Cal.App.5th 123 (*E.C.*), we conclude "the error is prejudicial because neither the agency nor the court gathered information sufficient to ensure a reliable finding that ICWA does not apply and remanding for an adequate inquiry in the first instance is the only meaningful way to safeguard the rights at issue. ([*In re A.R.* (2021)] 11 Cal.5th [234,] 252–254 [(*A.R.*)].) Accordingly, we conditionally reverse the juvenile court's finding that ICWA does not apply and remand for further proceedings consistent with this opinion, as set forth herein." (*K.H.*, at p. 591; accord, *E.C.*, at pp. 157–158.)

---

[1]   All further statutory references are to the Welfare and Institutions Code unless otherwise noted.

[2]   "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1.)

**Petition and Detention**

On September 11, 2019, the agency filed a petition on behalf of Angelina and her siblings pursuant to section 300, subdivision (b)(1).[4] Angelina was detained and placed in a licensed foster home. The petition contained an attachment stating Angelina could have Indian ancestry but did not state who provided the information.

The detention report stated ICWA did or could apply as mother had reported she had Indian ancestry but did not know the name of the tribe. Maternal grandmother had told mother about the family's ancestry. The report further stated that the agency had been in contact with maternal aunt M.S. for placement purposes.

Prior to the detention hearing, mother and father each filled out a Parental Notification of Indian Status (ICWA-020) form. Mother claimed Indian ancestry, stating maternal great-grandfather Leroy M. is or was a member of a federally recognized tribe, but did not specify what tribe. Father denied having Indian ancestry.

On September 12, 2019, the juvenile court held a detention hearing. Mother, maternal grandmother, and maternal aunt M.S. were present, but the hearing was continued.

On September 16, 2019, the juvenile court held the continued hearing. Mother, father, maternal aunt Mary,[5] and maternal grandmother were present. The court found a prima facie case had been established and ordered Angelina detained from parental custody. At the hearing, the court noted that in an earlier dependency case, the court did

---

[3]    Because the sole issue on appeal concerns ICWA, we restrict our facts to those bearing on that issue or helpful for clarity.

[4]    Angelina's siblings are not part of this appeal.

[5]    Her last name was not stated on the record.

not make ICWA findings, but there mother had also stated she believed she had Indian ancestry. The following colloquy ensued:

> "THE COURT: And so I'm going to direct that [mother] provide the [a]gency with an ICWA[-]30 document that provides as much information as you can to see if we can locate what tribe you might be associated with.
>
> "Back in 2008, [mother], you said you had Native American heritage, but you did not know the name of the tribe, and that your mother told you that you have Native American heritage.
>
> "And your mom's here today. So[,] if your mom has that information to provide to the [a]gency, then we will get that and determine whether or not [ICWA] applies.
>
> "[Father] indicated he did not have any Native American ancestry. [¶] Is that still your belief, [father]?
>
> "THE FATHER: Yes[.]
>
> "THE COURT: You do not, but mother thinks she does. All right. So we'll reserve rulings on that until we get more information."

**Jurisdiction and Disposition**

In its jurisdiction and disposition report, the agency recommended the allegations be found true and that mother and father be provided family maintenance services. As for ICWA, the report stated ICWA could apply. Mother reported she had Indian heritage but did not know the name of the tribe. Maternal grandmother told her they had Indian ancestry. Mother later reported she believed maternal great-grandfather had Indian ancestry and that the ancestry was through her "mother's side from Colorado." However, she did not provide additional information. Father denied having Indian ancestry. Additionally, the report indicated the agency had identified and contacted maternal and paternal relatives for placement, including maternal great-aunt Mary P., maternal great-aunt Ana V., maternal great-uncle Anthony V., and paternal aunt Rebecca C. The

report also stated Angelina and her siblings had been having visits with several other maternal and paternal extended family members.

In October 2019, the juvenile court held a combined jurisdiction and disposition hearing. Mother, father, maternal grandmother, and maternal aunt Mary were present. The hearing was continued. Mother, father, Angelina and Angelina's three siblings were present at the continued hearing. The court took jurisdiction but returned the children to the parents' custody on a plan of family maintenance, and set a review hearing.

**Six-Month Status Review**

The agency's report stated ICWA could apply. In February 2020, the agency inquired as to mother's Indian ancestry again and she reiterated she believed she had ancestry through her mother's side. Father had denied having Indian ancestry in prior inquiries.

In June 2020, the juvenile court held a six-month status review hearing and ordered that family maintenance services continue.

**Twelve-Month Status Review**

The agency's 12-month status review report stated ICWA could apply and reiterated the information from prior reports.

In November 2020, at the 12-month status review hearing, the juvenile court ordered that family maintenance services continue.

**Supplemental Petition, Detention, and Disposition**

On April 30, 2021, the agency filed a supplemental petition on behalf of Angelina and her siblings pursuant to section 387, subdivision (b)(1).

The supplemental detention report stated ICWA did not apply because Angelina was now in mother's care. However, the report detailed the agency's additional efforts to gather information. In November 2020 and March 2021, the agency conducted renewed inquiries with mother, and she again reported she believed she had Indian ancestry

through her mother's side of the family. However, she could not provide additional information because she " 'doesn't talk to that side of her family.' "

In May 2021, the juvenile court held a detention hearing and granted the petition, found a prima facie case had been established, and ordered Angelina temporarily placed under the agency's care. The agency left Angelina in mother's care.

The supplemental disposition report stated ICWA could apply and reiterated the same information from prior reports. The agency recommended continuing family maintenance services for mother and offering father reunification services.

In June 2021, the juvenile court held a disposition hearing and continued mother's family maintenance services and ordered father to participate in reunification services.

**Second Supplemental Petition, Detention, and Disposition**

On August 23, 2021, the agency filed a second supplemental petition pursuant to section 387, subdivision (b)(1). Angelina was detained and placed with a confidential relative.

The detention report stated ICWA could or could not apply and reiterated that mother reported several times she believed she had Indian ancestry through her mother's side of the family. Father had denied having Indian ancestry since the beginning of the proceedings. The report further stated the agency had been in contact with maternal aunts Ma.S. and M.S. for placement purposes.

In August 2021, the juvenile court held a detention hearing and granted the petition, found a prima facie case had been established, and ordered the children detained.

In its supplemental disposition report, the agency recommended offering mother reunification services and continuing father's reunification services. Angelina was still in placement with a relative. The report further indicated ICWA could apply. In August 2021, the agency conducted a renewed inquiry with mother, but she reported she had not obtained additional information. Father had denied having Indian ancestry.

6.

In September 2021, the juvenile court held a disposition hearing and adopted the agency's recommendation.

**Notice of Child Custody Proceeding for Indian Child (ICWA-030)**

In September 2021, the agency sent an ICWA-030 notice to the BIA as mother claimed Indian ancestry but did not know with what tribe. The notice only included the children's and parents' information. The BIA responded with a letter stating that the notice contained insufficient information to determine tribal affiliation.

**Third Supplemental Petition and Detention**

On October 5, 2021, the agency filed a third supplemental petition pursuant to section 387, subdivision (b)(1). Angelina was detained and placed in a licensed foster home. At the detention hearing, the juvenile court granted the petition, found a prima facie case had been established, and ordered Angelina detained. The agency did not request a supplemental disposition hearing, but asked that the previously scheduled six-month status review hearing be confirmed.

**Six-Month Status Review**

In its six-month status review report, the agency recommended the parents continue receiving family reunification services and that ICWA be found inapplicable. As to ICWA, the report stated ICWA did not apply, stating mother had not provided additional information, father denied having ancestry, and the BIA reported ICWA did not apply. The report further indicated the agency had been in contact with maternal aunts Ma.S. and M.S., and maternal cousin R.V. for placement purposes.

In March 2022, the juvenile court held a six-month review hearing and adopted the agency's recommendations. The court found ICWA did not apply and set a 12-month review hearing.

**Twelve-Month Status Review**

In its 12-month status review report, the agency recommended that mother and father's reunification services be continued. As to ICWA, the report stated the juvenile court had found ICWA inapplicable at the six-month status review hearing.

In November 2022, the juvenile court held a 12-month status review hearing and continued the parent's reunification services.

**Eighteen-Month Status Review**

In its 18-month status review report, the agency recommended the juvenile court order long-term foster care for Angelina. As to ICWA, the report reiterated that the court had found ICWA inapplicable and added that no new family members were identified to conduct inquiries with.

In March 2023, the juvenile court held an 18-month status review hearing where it terminated mother and father's reunification services, ordered a permanent plan of another planned permanent living arrangement for Angelina, and set a section 366.3 hearing.

In March 2023, mother and father filed notices of intent to file writ petitions, which this court deemed notices of appeal.

## DISCUSSION

I.     ICWA

A.     **Legal Principles**

" 'ICWA is a federal law giving Indian tribes concurrent jurisdiction over state court child custody proceedings that involve Indian children living off of a reservation' [citations], in furtherance of 'federal policy " 'that, where possible, an Indian child should remain in the Indian community' " ' [citations]. 'ICWA establishes minimum federal standards, both procedural and substantive, governing the removal of Indian children from their families' [citations], and '[w]hen ICWA applies, the Indian tribe has a right to

intervene in or exercise jurisdiction over the proceeding.' " (*K.H.*, *supra*, 84 Cal.App.5th 566, 594, fn. omitted; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 138, fn. omitted.)

" 'In 2006, California adopted various procedural and substantive provisions of ICWA.' [Citations.] The Legislature's 'primary objective … was to *increase* compliance with ICWA. California Indian Legal Services (CILS), a proponent of the bill, observed that courts and county agencies still had difficulty complying with ICWA 25 years after its enactment, and CILS believed codification of [ICWA's] requirements into state law would help alleviate the problem. [Citation.]' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 595; accord, *E.C.*, *supra*, 85 Cal.App.5th at pp. 138–139.)

" 'In 2016, new federal regulations were adopted concerning ICWA compliance. [Citation.] Following the enactment of the federal regulations, California made conforming amendments to its statutes, including portions of the Welfare and Institutions Code related to ICWA notice and inquiry requirements. [Citations.] Those changes became effective January 1, 2019 ….' [Citation.] Subsequently, the Legislature amended section 224.2, subdivision (e), to define 'reason to believe,' effective September 18, 2020." (*K.H.*, *supra*, 84 Cal.App.5th at pp. 595–596, fn. omitted; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 139.)

### 1. Summary of Duties of Inquiry and Notice

"[W]hether a child is a member, or is eligible for membership, in a particular tribe is a determination that rests exclusively with the tribe, and neither the agency nor the court plays any role in making that determination. [Citations.] ' "Because it typically is not self-evident whether a child is an Indian child, both federal and state law mandate certain inquiries to be made in each case." ' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 596; accord, *E.C.*, *supra*, 85 Cal.App.5th at pp. 139–140.)

"In California, section 224.2 'codifies and elaborates on ICWA's requirements of notice to a child's parents or legal guardian, Indian custodian, and Indian tribe, and to the [Bureau of Indian Affairs].' " (*In re A.R.* (2022) 77 Cal.App.5th 197, 204.) California

law imposes "an affirmative and continuing duty [on the court and the county welfare agency] to inquire whether a child for whom a petition under [s]ection 300, … may be or has been filed, is or may be an Indian child." (§ 224.2, subd. (a).)

"The [state law] duty to inquire begins with the initial contact, including, but not limited to, asking the party reporting child abuse or neglect whether the party has any information that the child may be an Indian child." (§ 224.2, subd. (a).) "If a child is placed into the temporary custody of a county welfare department pursuant to [s]ection 306 … the county welfare [agency] … has a duty to inquire whether that child is an Indian child. Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." (§ 224.2, subd. (b).) Additionally, "[a]t the first appearance in court of each party, the court shall ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child. The court shall instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child." (§ 224.2, subd. (c).)

"If the initial inquiry provides 'reason to believe' that an Indian child is involved in a proceeding—that is, if the court or social worker 'has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe'—then the court or social worker 'shall make further inquiry' regarding the child's possible Indian status as soon as practicable." (*In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 999 (*Ezequiel G.*), citing § 224.2, subd. (e).) "Further inquiry 'includes, but is not limited to, all of the following: [¶] (A) Interviewing the parents, Indian custodian, and extended family members[;] [¶] (B) Contacting the Bureau of Indian Affairs and the State Department of Social Services[; and] [¶] (C) Contacting the tribe or tribes and any other person that may reasonably be expected to have information

10.

regarding the child's membership, citizenship status, or eligibility.' " (*Ezequiel G.*, at p. 999.)

"If there is 'reason to know' a child is an Indian child, the agency shall provide notice to the relevant tribes and agencies in accordance with section 224.3, subdivision (a)(5)." (*Ezequiel G.*, *supra*, 81 Cal.App.5th at p. 999, citing § 224.2, subd. (f).) "There is 'reason to know' a child is an Indian child if any one of six statutory criteria is met—i.e., if the court is advised that the child 'is an Indian child,' the child's or parent's residence is on a reservation, the child is or has been a ward of a tribal court, or either parent or the child possess an identification card indicating membership or citizenship in an Indian tribe." (*Ezequiel G.*, at p. 999, citing § 224.2, subd. (d).)

County welfare agencies "must on an ongoing basis include in its filings a detailed description of all inquiries, and further inquiries it has undertaken, and all information received pertaining to the child's Indian status, as well as evidence of how and when this information was provided to the relevant tribes. Whenever new information is received, that information must be expeditiously provided to the tribes." (Cal. Rules of Court, rule 5.481(a)(5).)[6]

### B. Standard of Review

"The juvenile court's finding that ICWA does not apply to the proceeding rests on two elemental determinations, 'subject to reversal based on sufficiency of the evidence.' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 601, quoting § 224.2, subd. (i)(2); accord, *E.C.*, *supra*, 85 Cal.App.5th at pp. 142–143.) First, "[t]he court must find there is 'no reason to know whether the child is an Indian child,' which is dependent upon whether any of the six circumstances set forth in subdivision (d) of section 224.2 apply." (*K.H.*, at p. 601, quoting § 224.2, subd. (i)(2); accord, *E.C.*, at p. 143.) Second, "[t]he juvenile

---

[6] All further references to rules are to the California Rules of Court.

court must … find a 'proper and adequate further inquiry and due diligence .…' " (*K.H.*, at p. 601, quoting § 224.2, subd. (i)(2); accord, *E.C.*, at p. 143.)

Under the substantial evidence standard, " 'a reviewing court should "not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts." [Citation.] The determinations should "be upheld if … supported by substantial evidence, even though substantial evidence to the contrary also exists and the trial court might have reached a different result had it believed other evidence." ' [Citations.] The standard recognizes that '[t]rial courts "generally are in a better position to evaluate and weigh the evidence" than appellate courts' [citation], and 'an appellate court should accept a trial court's factual findings if they are reasonable and supported by substantial evidence in the record' [citation]. '[I]f a court holds an evidentiary hearing, it may make credibility determinations, to which an appellate court would generally defer.' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 601; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 143.)

The juvenile court's finding on the second element, however, "is ultimately discretionary because it requires the juvenile court to 'engage in a delicate balancing of' various factors in assessing whether the agency's inquiry was proper and adequate within the context of ICWA and California law, and whether the agency acted with due diligence." (*K.H.*, *supra*, 84 Cal.App.5th at p. 601, quoting *In re Caden C.* (2021) 11 Cal.5th 614, 640; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 143; *Ezequiel G.*, *supra*, 81 Cal.App.5th at pp. 1004–1005.) Therefore, we employ a hybrid standard and review the court's determination for substantial evidence and abuse of discretion. (*K.H.*, at p. 601; accord, *E.C.*, at pp. 143–144; *Ezequiel G.*, at pp. 1004–1005.)

" 'Review for abuse of discretion is subtly different [from review for substantial evidence], focused not primarily on the evidence but the application of a legal standard. A court abuses its discretion only when " ' "the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination." ' " [Citation.] But " ' "[w]hen two or more inferences can reasonably be deduced from the

facts, the reviewing court has no authority to substitute its decision for that of the trial court" ' " [Citations.] [¶] While each standard here fits a distinct type of determination under review, the practical difference between the standards is not likely to be very pronounced.' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 602; accord, *E.C.*, *supra*, 85 Cal.App.5th at pp. 143–144.)

"Review of the juvenile court's findings under the foregoing standards is deferential, but ' "an appellate court [nevertheless] exercises its independent judgment to determine whether the facts satisfy the rule of law." ' [Citations.] Where the material facts are undisputed, courts have applied independent review to determine whether ICWA's requirements were satisfied." (*K.H.*, *supra*, 84 Cal.App.5th at p. 602; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 144.)

### C. Analysis

#### 1. Summary of ICWA Inquiry and Notice

In the present case, mother consistently claimed Indian ancestry through her mother's side of the family. She also filled out an ICWA-020 form stating maternal great-grandfather Leroy is or was a member of a federally recognized tribe. However, mother did not know what tribe her family was affiliated with. As for father, he denied having Indian ancestry in an ICWA-020 form, and when the agency and juvenile court conducted inquiries with him. Although the court conducted inquiries with the parents, there is no indication it conducted inquiries with the maternal aunt and maternal grandmother who appeared at the hearings. Neither does anything in the record suggest that the agency conducted inquiries with the many extended family members it was in contact with, including maternal aunt M.S., maternal grandmother, maternal great-aunt Mary P., maternal great-aunt Ana, maternal great-uncle Anthony, maternal aunt Ma.S., maternal cousin R.V., and paternal aunt Rebecca. Moreover, the ICWA-030 notice that the agency sent to the BIA did not include the names of any family members.

13.

In *K.H.* and *E.C.*, we addressed ICWA error at the inquiry stage. There, we explained our decision not to follow the approaches articulated by other appellate courts for determining whether ICWA error requires reversal and concluded that the Supreme Court's decision in *A.R.* supplies the appropriate framework for assessing prejudice in this context. (*K.H.*, *supra*, 84 Cal.App.5th at pp. 607–608, citing *A.R.*, *supra*, 11 Cal.5th at pp. 252–254; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 152.) Applying the standards we articulated in *K.H.* and *E.C.*, as we discuss below, we agree with the parties and conclude the agency's error is prejudicial and remand for the agency to conduct a proper, adequate, and duly diligent inquiry is necessary.

### 2. The Agency and Juvenile Court Erred

As previously mentioned, "[a]t the first appearance in court of each party, the court shall ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child. The court shall instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child." (§ 224.2, subd. (c).) Moreover, when "a child is placed into the temporary custody of a county welfare [agency] …, the county welfare [agency] … has a duty to inquire whether [the] child is an Indian child. Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." (§ 224.2, subd. (b).) Extended family members include adult grandparents, siblings, brothers- or sisters-in-law, aunts, uncles, nieces, nephews, and first or second cousins. (25 U.S.C. § 1903(2); § 224.1, subd. (c).)

Further, "[n]otices must include the identifying information for the child's biological parents, grandparents, and great-grandparents, to the extent known. (§ 224.3, subd. (a)(5)(C).) As a best practice, they should also contain 'all available information

14.

about the child's ancestors, especially the ones with the alleged Indian heritage.' " (*In re K.T.* (2022) 76 Cal.App.5th 732, 742.)

Here, the agency inquired only of mother and father, which fell short of complying with the plain language of section 224.2, subdivision (b). "[T]he law demands more than merely inquiring of [a parent]" (*K.H.*, *supra*, 84 Cal.App.5th at p. 620, citing *In re Antonio R.* (2022) 76 Cal.App.5th 421, 431; accord, *In re M.M.* (2022) 81 Cal.App.5th 61, 74, review granted Oct. 12, 2022, S276099 (dis. opn. of Wiley, J.)), a point the agency does not dispute. There may be cases in which there is no one else to ask, but if that is so, the record must be developed to reflect that fact and supported by documentation. (Rule 5.481(a)(5).) "On a well-developed record, the court has relatively broad discretion [in such cases] to determine [that] the agency's inquiry was proper, adequate, and duly diligent on the specific facts of the case." (*K.H.*, at p. 589; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 157.) Additionally, the notice was deficient because it contained no information for extended family members. Accordingly, the juvenile court's finding that ICWA did not apply was not supported by substantial evidence, and its contrary conclusion was an abuse of discretion. (§ 224.2, subd. (i)(2).)

### 3. Prejudice

"Where, as here, the deficiency lies with the agency's duty of […] inquiry and a juvenile court's related finding of 'proper and adequate further inquiry and due diligence' (§ 224.2, subd. (i)(2)), the error is one of state law ([*In re*] *Benjamin M.*, *supra*, 70 Cal.App.5th at p. 742). Under the California Constitution, '[n]o judgment shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.' (Cal. Const., art. VI, § 13.)" (*K.H.*, *supra*, 84 Cal.App.5th at p. 606; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 151.)

15.

" '[T]o be entitled to relief on appeal from an alleged abuse of discretion, it must clearly appear the resulting injury is sufficiently grave to manifest a miscarriage of justice' [citations], and California law generally interprets its constitutional miscarriage of justice requirement 'as permitting reversal only if the reviewing court finds it reasonably probable the result would have been more favorable to the appealing party but for the error.' " (*K.H.*, *supra*, 84 Cal.App.5th at pp. 606–607; accord, *E.C.*, *supra*, 85 Cal.App.5th at pp. 151–152.)

However, in *A.R.*, the Supreme Court "recognized that while we generally apply a *Watson*[7] likelihood-of-success test to assess prejudice, a merits-based outcome-focused test is not always appropriate because it cannot always adequately measure the relevant harm. [Citation.] In other words, where the injury caused by the error is unrelated to an outcome on the merits, tethering the showing of prejudice to such an outcome misplaces the measure, at the expense of the rights the law in question was designed to protect." (*K.H.*, *supra*, 84 Cal.App.5th at p. 609, italics omitted.)

As we explained in *K.H.*, " 'ICWA compliance presents a unique situation ….' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 608.) "ICWA is not directed at reaching, or protecting, a specific outcome on the merits." (*Id.* at p. 609; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 154.) Rather, " '[t]he purpose of ICWA and related California statutes is to provide notice to the tribe sufficient to allow it to determine whether the child is an Indian child, and whether the tribe wishes to intervene in the proceedings' [citation], and an adequate initial inquiry facilitates the information gathering upon which the court's ICWA determination will rest." (*K.H.*, at p. 608; accord, *E.C.*, at pp. 152–153.) Yet, "while the appealing party is usually a parent, parents do not bear the burden of gathering information in compliance with ICWA [citations], and parents may raise the claim of error for the first time on appeal." (*K.H.*, at p. 608; accord, *E.C.*, at p. 153.) Further, the

---

**7**      *People v. Watson* (1956) 46 Cal.2d 818, 836.

ultimate determination whether a child is an Indian child rests with the tribe, not with a parent, the agency, or the juvenile court. (*K.H.*, at p. 590; accord, *E.C.*, at pp. 139–140.) "[W]here the opportunity to gather the relevant information critical to determining whether the child is or may be an Indian child is lost because there has not been adequate inquiry and due diligence, reversal for correction is generally the only effective safeguard." (*K.H.*, at p. 610, citing *A.R.*, *supra*, 11 Cal.5th at pp. 252–254; accord, *E.C.*, at p. 155.)

Here, the agency's inquiry, limited only to mother and father, " 'fell well short of that required to gather the information needed to meaningfully safeguard the rights of the tribes, as intended under ICWA and California law' " (*E.C.*, *supra*, 85 Cal.App.5th at p. 156, quoting *K.H.*, *supra*, 84 Cal.App.5th at p. 620), and "[a] finding of harmlessness on this record would necessarily require speculation and 'is at odds with the statutory protections that ICWA and California law intend to afford Indian children and Indian tribes.' " (*E.C.*, at p. 155, quoting *K.H.*, at p. 611.)  Therefore, the error is prejudicial and reversal is required.

Before reversing or vacating a judgment based upon a stipulation of the parties, an appellate court must find "both of the following:  [¶]  (A) There is no reasonable possibility that the interests of nonparties or the public will be adversely affected by the reversal.  [¶]  (B) The reasons of the parties for requesting reversal outweigh the erosion of public trust that may result from the nullification of a judgment and the risk that the availability of stipulated reversal will reduce the incentive for pretrial settlement."  (Code Civ. Proc., § 128, subd. (a)(8)(A) & (B).)  Because this case would be subject to reversal to permit compliance with ICWA and corresponding California statutes and rules absent the parties' stipulation, a stipulated remand advances the interests identified by Code of Civil Procedure section 128, subdivision (a)(8).  (See *In re Rashad H.* (2000) 78 Cal.App.4th 376, 379–382.)

17.

Accordingly, the juvenile court's finding that ICWA does not apply is conditionally reversed and the matter is remanded. The court is instructed to ensure the agency conducts " 'a proper, adequate, and duly diligent inquiry under section 224.2, subdivision[s] (b) [and (e)], and document its inquiry in the record in compliance with rule 5.481(a)(5).' " (*E.C.*, *supra*, 85 Cal.App.5th at p. 157, quoting *K.H.*, *supra*, 84 Cal.App.5th at p. 621.) " 'This should not be interpreted as requiring an exhaustive search for and questioning of every living relative of [Angelina]' but '[w]e leave that determination for the juvenile court in the first instance because it is better positioned to evaluate the evidence provided by the [agency]. So long as the court ensures the inquiry is reasonable and of sufficient reach to accomplish the legislative purpose underlying ICWA and related California law, the court will have an adequate factual foundation upon which to make its ICWA finding. (§ 224.2, subd. (i)(2).)' " (*E.C.*, at p. 157, quoting *K.H.*, at p. 621.)

## DISPOSITION

The juvenile court's finding that ICWA does not apply is conditionally reversed, and the matter is remanded to the juvenile court with directions to order the agency to comply with the inquiry and documentation provisions set forth in section 224.2, subdivisions (b) and (e), and rule 5.481(a)(5). Additionally, the juvenile court is directed to comply with the inquiry provisions of section 224.2, subdivision (c). If, after determining that an adequate inquiry was made consistent with the reasoning in this opinion, the court finds that ICWA applies, the court shall vacate its existing order and proceed in compliance with ICWA and related California law. If the court instead finds that ICWA does not apply, its ICWA finding shall be reinstated. In all other respects, the juvenile court's order is affirmed.

18.